The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Thank you. Good morning everyone. The first argued case is number 20-1647, Larson v. McDonough. Mr. Adig, please proceed. Thank you, Your Honor. May it please the court. The Veterans Court erred when it found that it lacked jurisdiction to review a board decision that obesity and dysmetabolic syndrome, or DMS, are not disabilities that can result from personal injuries suffered or disease contracted during service. The Veterans Court's error is premised on a misinterpretation of its jurisdictional statute, 38 U.S.C. 7252B, which states that the Veterans Court may not review secretarial action adopting or revising the contents of the VA Schedule of Ratings of Disabilities, what we call in the briefs the VASRD. The parties agree that the question before the board was whether Mr. Larson's obesity and DMS were disabilities resulting from his exposures to various toxins and vaccines in Desert Storm. To answer this question, the board should have considered whether Mr. Larson's obesity or his DMS functionally impaired his earning capacity. The board's consideration of whether obesity or DMS functionally impaired Mr. Larson's earning capacity is not secretarial action adopting or revising the contents of the VASRD under Section 1155 of 38 U.S.C. Mr. Abbott, this is Judge Hughes. Your time is short, so let me just get to what's bothering me here. And I know you rely on Saunders, and I think Saunders is pretty good case law for you on the notion that the board has to look at whether an alleged disability affects earning capacity and is service-connected. But let me ask you, assuming Saunders requires the same result here, what happens then? What happens if the board determines that the obesity does impact earnings compensation and is therefore a disability and finds that it's actually service-connected? Your Honor, the next step in that process, if the board was to find that obesity and or DMS were service-connected, the next step in that process would be to rate those disabilities. But how would they do that? Because it's not on the rating schedule. There are several ways. We can't and the Veterans Court can't order the board to rate this, right? That's the whole point of the restriction on the Veterans Court and our court's review of the rating schedule is Congress didn't want the courts mucking about the rating schedule. So how would the board rate this? I disagree with the premise, first of all, Your Honor, respectfully, that the court can direct the board to rate something. What it cannot do is direct them how to rate it. Specifically, it cannot tell them. Well, let's just assume I disagree with you. I don't want to quibble about that because I don't think you're right that we can order the court or order the board to add a condition to the rating schedule or rate a condition that isn't already on the rating schedule. That's not the point of my question, though, and I don't want to argue about it. How is the board going to do this if it's not on the schedule? They would rate it by analogy, first and foremost, Your Honor. They would look to the specific functional impairments of earning capacity as they affected Mr. Larson, whether it was a limited range of motion due to obesity, decreased endurance due to obesity, inability to hold prolonged fix to hosters due to disability, reduced hygiene due to his obesity, reduced stability leading to falls or injuries. They would look to different aspects of the rating schedule to rate that by analogy under 38 CFR 4.20. That is certainly something that the board has done in the past. The Veterans Court has reviewed and has jurisdiction to review whether a rating by analogy under 4.20 is proper, and it doesn't require that a specific condition be listed on the VAS or D. In fact, that's the whole point of 4.20 is to rate things that do not specifically appear on the schedule. Given that, and look, I think this case is hard and it exposes a gap in the case law and in the statute here, but given all of that, if we order the board to consider obesity and DMS and consider whether it's a service condition, aren't we in effect, even if not in name, ordering the VA to consider something as a condition that should be rated? I think to some extent that there's accuracy in that, Your Honor. I think that there is overlap between what constitutes a disability and how that disability is relating. You're getting right at my problem here. Part of this is we have Saunders out there, and I think Saunders already answers a lot of this question and just didn't consider the jurisdictional impacts, but we're bound by Saunders unless we reconsider it. But if what we're doing by saying you've got to look at obesity and DMS and determine whether it's a disability and whether it's service-connected is, in effect, telling the VA that this is a condition that has to be rated on the schedule somehow, then isn't that pushing up against the restrictions on courts looking at this rating schedule? Again, just assume that I don't think we can do that. I know you have some arguments about why we can't, but I want to assume that we have a broad jurisdictional limitation on ordering the VA to add things to the rating schedule to consider what the rating should be and all of that. So isn't, in effect, if we say go ahead and rate obesity saying, in effect, even if we're not saying explicitly you have to consider this as something to be rated, that's what we're doing? I disagree with that, Your Honor, and I don't see necessarily the telling. And this may be what you don't want to quibble about, so I apologize, Your Honor, if I am going into that territory. But I don't see the court telling the board to consider whether a certain basket of symptoms or a certain basket of impairments, whether those constitute a disability under 1110. I don't think that's a requirement that the board rate those or that the board. Let me ask you another hypothetical then that's from this. What if the VA goes back and follow it? If we remand this and order the VA to consider whether obesity and DMS are disabilities and whether they're service-connected, and they decide, yes, they're disability, yes, there's evidence to service-connect them, and they say, but this is not on the rating schedule. Therefore, we decline to rate it. Can the Veterans Court review that decision? If the court was to order the board to review whether or not obesity and DMS could be service-connected and the board came back and said, these are service-connected conditions, but we decline to rate them, I think at that point that there would be a question involved as to whether or not the Veterans Court could review that determination or not. I think that gets into, I believe the case was, I'm drawing a blank at the moment, but I believe it was Wingard that said that when there's a 0% rating on the schedule, the court couldn't review whether or not that 0% was appropriate. So I think that the Veterans Court would have some limitation in its ability to review whether or not the board's decision as to the rating element was appropriate or not. I think the bar would cover that. Well, I get that, and that's one of the answers I was thinking about, but let me push you a little bit further because I think this is also a possibility. What if the VA doesn't say we're going to rate this 0? What if they say we decline to give this any rating whatsoever? Because a 0% rating is still, in effect, some type of rating, and it has other consequences of getting secondary service connection and ancillary benefits. But what if they say we decline to go any further? Because all Sanders requires is that we consider disability and service connection. We've done that, but we're not going to take any additional steps. What happens then? I think at that point what happens then is, as the statutes require, is that there would be a finding that the disability is service-connected, and that would open the door to other ancillary or derivative benefits available to the Veteran. I don't know that there would necessarily, with the understanding that I'm speculating as to how the Board might phrase that decision, I don't think that there would be an ability for the Veterans Court to review a finding that says we're not going to go any further and assign any rating, whether it says it's a 0% rating or whether there's no consideration of a rating at all. I think an argument could be made that that failure to rate is a failure to follow the strictures of 1155, but at that point, then, we're getting into that jurisdictional bar. Thanks. I appreciate that answer, and I think it's a very honest and candid answer. I appreciate not jousting too much on this. Let me switch gears just a little bit because I know your time is short. If the VA hasn't added obesity and DMS and it looks like there's something out there, can the Veterans community first file a request with the Secretary to do a rulemaking to add obesity and DMS to the schedule, and if the Secretary declines, file a 502 petition to us to review that declination. Is that another route to get obesity and DMS considered as service-connected disabilities that should be on the rating schedule? Your Honor, I think that would be one route. I think that one route, as you mentioned, is that we could request rulemaking, and then depending on the Secretary's response, we could challenge that under 502. I think that there may also arguably be a route to challenge the OGC presidential opinion as to obesity and whether or not it's a disease under that same process. I think that's very arguable, but I think that's another route that could be followed. Do you know if anybody has asked the Secretary to do a rulemaking on obesity and DMS? Mr. Larson has not. I am not aware if anybody else has made that request. Okay. Well, I can ask the Governance Council. They may or may not know. Thank you. Counselor, this is Judge Reyna. I want to go back a little bit because it seems to me that we're a step ahead to where this appeal actually brings us. It seems to me that even if we find that obesity constitutes a disability, doesn't the Board have to find service connection first? Don't we have to send this back in order for there to be a determination on service connection at the first instance before we go on and determine any rating that's applicable? Yes, Your Honor, that's correct. The first question that has to be decided by the Board is whether or not obesity or DMS can be disabilities under the Shedden test or under 1110. The second question is whether or not they have a nexus. Right. So the Board bases decision on a requirement that a disability be listed on the schedule in order to be rateable. Does that requirement actually exist? I'm not familiar of any requirement that that exists. I know that the case law, certainly in Saunders, and I believe there was a Veterans Court decision subsequent to this appeal in Waite that says that the Board may look to the rating schedule to see what the VA Secretary considers functional impairments of earning capacity in making the decision as to what constitutes a disability. But I'm not aware of any rule, law, or regulation that directs the VA to find that based on the absence of a condition from the rating schedule that it cannot be service-connected or that it cannot be a disability. Okay. But now is your final question, is your understanding of Saunders and the way precedent has evolved up to this stage that it's a necessary intermediate step first to move the disability to the rating schedule, even if it's listed as zero, or that the VA is obliged to look at the particular case for the particular Veteran and determine in that case whether there's a compensable disability? And thinking about Saunders, I think it leaves that open. Your Honor, I think that the way that we view it is that it's an individualized consideration, whether or not a particular condition can constitute a functional impairment of earning capacity. I think there's scenarios where the Secretary could come in and say, as a matter of regulation, that obesity is not a disability. I think that they could say that, and I think that that would raise questions about reviewability there. I think that they could certainly say that, but I think generally speaking, as the law stands now, it's an individualized consideration whether or not the particular functional impairments that the Veteran suffers, regardless of the underlying cause or the underlying pathology, whether or not those result in a functional impairment of earning capacity. Okay. All right. Let's hear from the government, and we'll save you rebuttal time. Mr. Kipura. Yes, thank you, Your Honor, and may it please the Court. The sole question before the Court is whether the Veterans Court has jurisdiction to review what conditions are considered disability. And the controlling statutory provisions, as made clear by this Court's case law, establish that it does not. I'd first like to turn to the discussion that was had a moment ago regarding 38 CFR Section 4.20, which is the regulatory provision allowing for an analogous rating. Mr. Kipura, this is Judge Hughes. Before you move on to that, your time is short, so let me just start with where I am. And that is, why isn't Saunders controlling here? Saunders said that you had to look at a disability, and it didn't say that it had to be on the rating schedule or anything. It just said if it's an alleged disability, i.e., that it had some impact on earnings capacity, you looked at it, and then you made the service connection. Isn't this on all fours, and isn't that all we have to do here and say Saunders controls? You have to consider obesity and DMS and whether there's an impact on earnings and whether it's service-connected. And all that other hypothetical discussion about ratings and the schedule and the like is premature here. Well, Your Honor, with respect, Saunders held that the Veterans Court could not or held that the Veterans Court's interpretation of 1110, saying that pain could not be a disability, was a misinterpretation of 1110. In fact, our position is that Saunders is consistent with Wanner and Weingart in that the Veterans Court does not have the authority to say either way what is or what is not a condition that can be rated by the Secretary. But that's not the question. I understand. I think there's a gap here in the statute and there's some tension in the case law, but Saunders doesn't speak to the rating schedule at all, and the Veteran in this case is not asking us to review the rating schedule, whether obesity should be added to the rating schedule or rated under the rating schedule. He's simply asking for the same thing in Saunders, which is to determine whether it's a disability under 1110. Yes, I understand, Your Honor, but I think it goes more towards the fact that the disability is not on the rating schedule, in effect, moots the question of whether or not there is a functional impairment, which was the primary issue in Saunders. In other words, even if Mr. Larson were considered to have a functional impairment, if the disability to which it's related is not on the schedule, then the rest of the question is moot because it can't be service-connected. What is your legal authority to support that last statement you made? It seems to me that you're saying that there is a requirement that a disability be listed on the schedule in order for it to be eventually ratable. But what's the requirement? Well, yes, Your Honor, because under 1110, it's provided that any compensation that would be provided for a disability, the phrase that's in the statute is compensation as provided in the subchapter, which refers then to the rest of the statutory scheme, particularly 1155. And this court's holding in Wanner stated that the Veterans Court could not review what is included on the rating schedule. So the question is not whether or not functional impairment actually exists here. It's whether or not that impairment could, in fact, be rated and whether or not the Veterans Court has jurisdiction under 7252B to review that. It sounds that that argument you just made is contrary to Saunders, and you're asking us to overrule Saunders. Respectfully, Your Honor, we're not asking the court to overrule Saunders. Again, our view is that Saunders... Well, Your Honor, the difference here as opposed to Saunders is that in Saunders, the court was reviewing an interpretation of the Veterans Court, and it's a separate question as to whether or not a particular condition creates a functional impairment versus whether or not that functional impairment can be rated. Those are two separate issues, and Saunders only has one of them. Let me ask you this. This is Judge Hughes again. I feel like you're skipping over something, but clearly Saunders, at least as applied here, could require the board to consider whether there's a functional impairment, right? The board could consider that, Your Honor, but without it... Right. But then, no, no, here's where I'm a little concerned because I'm thinking you're skipping over this issue. Is there anything in Warner or any of the other case law that prohibits the board from then considering whether that condition is service-connected, not whether it's rateable, but just whether it's service-connected? Well, Your Honor, I think it goes back to the question that you asked opposing counsel. The answer is no, there's nothing preventing the board from considering that, but even if they did, what would happen then in that if it can't be rated and the secretary has chosen not to include that condition on the rating schedule and that determination is not subject to review, then even if it was, no benefits could be provided because it's not included on the rating schedule. Well, is that true, that no benefits, I mean, certainly no compensation benefits for that particular condition could be provided, but would that preclude, if you've got a service-connected disability, would that preclude ancillary benefits and other things that you can get for service-connected diseases even if it's not on the schedule? It would preclude it, Your Honor, because in order for the benefits to be provided, again, the connection, this nexus of an in-service incident has to be connected to the current disability, and without the disability being on the rating schedule, in a sense, there's nothing to service-connect to. No, see, you're going around and around, and you're not really responding to the question. Saunders already, I think, and you can dispute what Saunders requires, but I think it makes it very clear that to the extent that obesity and DMS can be considered disabilities that have an impact on earnings compensation, that the board can look at them. And so I don't see how we get around Saunders on that point. And so then the question is, and Saunders didn't reach to that, is if the board concludes that obesity here does have an impact on the earnings compensation, can it look at service connection, which doesn't have anything to do with the rating schedule. It has to do with whether you can show that it was a disease or a disability contracted by or aggravated by service, right? Well, Your Honor, I think there's a key difference in this case as opposed to Saunders, which was that the discussion of what – I don't want to hear all this. I'm going to ask you a yes or no question. If the board concluded that obesity and DMS had an impact, was a disability, in the sense that it had an impact on earnings capability, could the board then determine under the traditional factors whether or not it was service-connected without regard to the rating schedule? I'm not sure how the board would get there, Your Honor. Wouldn't they just apply the regular test you use to determine whether something's service-connected or not? That doesn't have anything to do with the rating schedule, does it? The rating schedule comes in at the end when you have a disability that's service-connected and then you look at the schedule to see what the severity is, what the impact on earnings is, and then you give them a zero, a 10, a 40, a 100, whatever.  So, yes, the issue of whether or not a particular condition was connected to service, yes, that question can be determined independent of the rating schedule. But what the board said here is that even after we go through all of that, if we get to the end and the current disability is not something that's included on the nothing can be granted when we get to that point. If that's what Saunders requires, then isn't that what Saunders requires? And then it's left to the veteran to decide to do with what they can with this service-connected disability that's not entitled to a rating. I mean, I think you're opposing. Your friend on the other side seemed to concede that the courts couldn't force them to rate obesity and couldn't force them to put it on the schedule. So I don't see any real dispute here to a certain extent about what Saunders, you know, I know you don't think Saunders requires this, but it doesn't seem like your friend on the other side is actually asking at the end of that for it to be rated under the schedule or the like. But in any event, we're not there. That would all depend on the first two questions, whether the board determines it's a disability and whether the board determines it's service-connected. And we're way premature on that because they didn't even address those questions. Well, Your Honor, again, the difference with Saunders, and I think the problem with the analogy to that here is that the appellant is trying to draw a connection between the discussion of pain in Saunders with obesity here. And, in fact, in Saunders, the pain that was being discussed was related to an underlying condition, namely a bilateral knee condition that the appellant in Saunders was alleging was causing pain. And the question was whether or not that pain could serve as a functional impairment, and the bilateral knee condition was, in fact, on the rating schedule. Here, the appellant is asking the obesity condition to essentially do both, that it's both the rateable condition as well as the condition that's causing the functional impairment, whereas Saunders was only speaking to the second half of that. And, again, as we discussed in the briefing, obesity could be a symptom of a rateable condition. I believe we refer to the Cushing syndrome as something that is on the rating schedule that can manifest with obesity. But that's not what the appellant is asking for here. They're asking that obesity... Okay, I understand your point. I'm not sure that you... I understand your reading of Saunders. That's not my... Because it is connected to another condition that could be service-connected. My reading is it required them to look at pain as a disability in and of itself, which seems to me, again, to be on all fours with whether the board can look at obesity as a disability in and of itself. Well, again, I think our reading of Saunders is that, yes, the pain was what was causing the functional impairment, not that the pain itself was the underlying disability. And further, as we... Can you point me anywhere in Saunders where it's made clear that they were relying on the knee issue as why it wasn't a problem with the jurisdictional schedule? I mean, I know none of it is discussed, but it didn't seem to me that they were talking about the pain in connection with the knee issue. They were talking about pain as a disability for purposes of 1110. And they didn't require any further connection to a rateable condition. But if you have language from Saunders that suggests that they required it to be part of a rateable condition, I'm happy to look at it. Well, yes, Your Honor. In Saunders, the court refers to the VA disability rating regulations that treat pain as a form of functional impairment. And they cite to a number of different regulatory provisions that refer to pain as causing functional loss. And I think, again, this highlights the key difference, which is that in Saunders, this court was reviewing the Veterans Court's interpretation of 1110, not an action by the Secretary, which is the case here. And that action is that the Secretary has chosen not to include obesity on the rating schedule. In Saunders, I see my time is up. Judge Newman, I have a question to ask. Yes, please continue. In Saunders, when the case came to us, we already had a service connection, correct? There had already been a question of service connection that had already been established. In this case, we don't have that. And it seems to me that we can't go any further until we send this back and have that issue determined. And you were taking a position a while back that tracks along to what I'm saying. And it just seems to me that we need to give the Board the opportunity in the first instance to make a decision to service connection because that may kick off indexing to other disabilities. And it could be that as a result of that decision, the service connection issue, that the Board determines that this should be rateable. We're not making that decision. All we're saying is that you have to first make a service connection determination. Well, respectfully, Your Honor, I think that such a decision would, in effect, be this court ordering the Board or VA to include obesity on the rating schedule because... If we vacate and remand in order for the Board to make a decision in the first instance as to service connection, you're taking the position that that, in effect, is telling the Board what to rate and what not to rate, that that addresses the content of the schedule? Well, yes, Your Honor, because, again, even if the court were to hold it that the rating determination happens at the end of the process, if there can be no rateable condition, then essentially Mr. Larson would wind up in the same place in that the Board could go through all of that. Well, maybe, but as a result of its looking at the case and addressing the issue of service connection, couldn't the Board at that time decide that it is rateable? Well, the Board wouldn't have the authority to unilaterally add something to the rating schedule. Well, I guess I'm at the Secretary, you know, on behalf of the Board or being directed by the Board. Well, Your Honor, the process for the Secretary to do that, again, the Secretary could do that, and I believe Judge Hughes referenced it earlier that there is a separate process for rulemaking where the Secretary could make that determination or not. I understand that, and we're not addressing that. I mean, nobody here, I think, is saying that we can order or we want to order the Secretary to undertake rulemaking process to determine whether they should be rateable or not. It's just that I think that we're really putting the cart before the horse here, that there has to be a determination as to whether there's service connection, because that's really what leads you to the schedule. That's really what leads you to determine if there's any connection to any aspect of the schedule. And that's what Sanders was about. No, I understand your point, Your Honor. I think where the Board's action here looked to what the Veteran presented to it, which is that the condition he was seeking service connection for was or the conditions were obesity and DMS. And the Board looked at those and said that those conditions were not rateable and chose not to undertake the service connection analysis because at the conclusion of it, it would not be possible for any benefits or anything to be granted. How do we know that? How does the Board know that? That's almost speculation. How do they know that? They're saying that after we conduct the entire process as to whether there's service connection, this is how we're going to decide, and as a result, this is how we're going to decide. And actually, they could determine that obesity may constitute a disability, right? I mean, that could happen, correct? Well, if the question is whether or not obesity... I'm asking, can't the Board, in making a service connection determination, conclude that obesity may constitute a disability? Yes, they could find that obesity causes... to have the Board make that determination in the first instance. Well, again, because, Your Honor, in order for any benefits to be granted, there has to be a provision within the rating schedule. In other words, the disability has to be something for which the Secretary has determined benefits are available. And in this case, the Secretary has said this is not a condition where benefits may be granted. Isn't that contrary to Saunders? I mean, just to be clear, is the Secretary's position that unless a specified disability can be moved onto the rating schedule somehow, that it's not compensable no matter how direct or strong the evidence of service connection? At bottom, Your Honor, yes, that's correct. That the Secretary and the preceding case law in Wanner and Wingard determines that the Secretary makes the determination for which conditions may be compensable and that that determination is not subject to review. And then Saunders fixed that, didn't it? Wasn't that the idea of Saunders? Well, respectfully, Your Honor, the view in Saunders was that the Veterans Court had made a determination that something could not be a disability. Well, Saunders took the case as it was handed to us, but the principle I think Saunders recognized was significant and, let me say, broad. And the Secretary says it's not broad. It's limited to those particular procedural facts? Yes, Your Honor. I believe Saunders answered the question of whether what the board has to consider that could create a functional impairment, but it did not go to the requirements of the Secretary. It did not require the Secretary to include something on the rating schedule, which is what Wanner and Wingard pointed to and what 7252 controls. Counsel, this is Judge Hughes again. Let me be clear. Nobody is asking the Secretary to add obesity to the rating schedule. They're asking for the Secretary to consider, just like it did in Saunders, whether it was a disability, and then, if it is, do the further second step of determining whether it's service-connected. And it seems like you're saying, well, at the end of that process, nothing is going to be rateable here, so we're not going to go through that first process in the first instance. But I don't see anything in 1110 that requires a condition to be rateable, and certainly Saunders seems to go the other way. So, again, I understand, at the end of the day, we're going to have a really hard legal question of what do you do if, in this case or in some other case down the road, you end up with a condition that's service-connected that's not on the rating schedule. But that question is not here. The question is, did Saunders require the Secretary to consider conditions as disabilities and without regard to the rating schedule? It said yes. It seems like the second question that nobody addressed in Saunders but would seem to fall under the same thing is, if you do determine it can be a disability, then is it service-connected? And, again, I take it your position is, well, because nothing will come of it at the end of the day, we shouldn't go through that process. But isn't that backwards? Shouldn't you have to go through that process? And then, again, we're going to have a hard legal question. What to do with it? Well, Your Honor, I guess what it comes down to is it's a question of, you know, yes. Again, the Secretary, the statutory scheme, provides the Secretary with the authority to determine. I've been using the term conditions or disabilities. Which disabilities would be included on the rating schedule? In other words, which disabilities will be provided benefits? And that determination is what 7252 precludes from review. And, you know, again, we believe that Saunders is, in fact, consistent with this scheme in that the question there was whether or not a particular type of functional impairment, you know, could show an existing condition. And the court held that it could. But the pain itself was not what was being rated. So I think that's the difference here is that, ultimately, a ruling of the type that you described would end in one of two places. Either it would be the court essentially ordering the Secretary to include obesity on the rating schedule, or it would result in, even if the Board found that Mr. Larson was functionally impaired by obesity and it constituted a disability, if it wasn't on the rating schedule, you know, that's what the Board would hold, and that would be non-reviewable by 7252 as well. Okay. Any more questions for Mr. Kipura? I hear silence. Okay, Mr. Adig, you have your rebuttal time. Thank you, Your Honor. I think the court's instincts are correct that there is a hard legal question coming, and that question kind of runs around the perimeter of how do you rate a condition that is not listed on the Vassar D. I don't think the court can reach that question here because we don't yet know what the Board is going to do. The Board has not made any finding as to whether there is or is not a functional impairment of earning capacity, and they very well could. They could come back and look at Mr. Larson's unique situation and say the fatigue that Mr. Larson experiences as a result of his obesity is a functional impairment of earning capacity, and they could rate it by analogy using the criteria for chronic fatigue. They could look at both obesity and BMS and say, these are both functional impairments of earning capacity, but we're not going to rate them because they don't appear on the schedule. And then there could be a question whether or not the VA failed to follow its own regulation, 3.324, which talks about when there's two non-compensable service-connected conditions that the VA has the authority to give a 10% rating. Or they could come back and say that obesity is a disability and rate it under the extra scheduler factors of 3.321B. And so there's a lot that the Board could do, and I think that the key question here is the first step that the Board needs to take is to tell us whether or not there is or is not a functional impairment of earning capacity and whether that earning capacity impairment is related to Mr. Larson's exposures to toxins and vaccines in service. So for that reason, we would ask the courts to reverse the Veterans Court's finding and return this case, remand this matter to the Board to develop and review whether Mr. Larson's obesity and BMS constitute a functional impairment of his earning capacity and allow the case to proceed from there. Any questions for Mr. Adick? Hearing none, with thanks to both counsel, the case is taken under submission.